**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-cr-20438-BLOOM**

UNITED STATES OF AMERICA,

      Plaintiff,

v.

RONALD MIJAIL ARREGOCES BARROS,
JULIO JOSE HERNANDEZ-OLAYA, and
RONALD JEFFERY ROSADO,

      Defendants.
_____/

**ORDER ON MOTION TO DISMISS INDICTMENT**

**THIS CAUSE** is before the Court upon Defendants Ronald Mijail Arregoces Barros ("Barros"), Julio Jose Hernandez-Olaya ("Hernandez-Olaya"), and Ronald Jeffery Rosado's ("Rosado") (collectively, "Defendants") Motion to Dismiss Indictment, ECF No. [31] ("Motion"). The Government filed a Response in Opposition, ECF No. [33] ("Response"), to which Defendant Barros filed a Reply, ECF No. [36] ("Reply"). Defendant Hernandez-Olaya filed a Motion to join the Reply, ECF No. [37], which the Court granted, ECF No. [38]. To date, Defendant Rosado has not filed a Reply. The Court has considered the Motion, the record, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

**I.     BACKGROUND**

According to the Complaint, on or about August 10, 2021, a Maritime Patrol Aircraft ("MPA") located a go-fast vessel ("GFV") dead in the water in the Caribbean Sea approximately 233 nautical miles south of Santo Domingo, Dominican Republic and 100 nautical miles north of Aruba. *See* ECF No. [1] ("Complaint"). The HNLMS HOLLAND, manned by United States Coast

CASE NO. 21-cr-20438-BLOOM

Guard ("USCG") Law Enforcement Detached Team ("LEDET") 101, investigated the GFV. Defendants were on the GFV, which had no indicia of nationality. During the right of approach questioning by USCG personnel, Defendant Barros, who was the master of the vessel, claimed Colombian nationality for the vessel. Upon being contacted by U.S. authorities pursuant to the U.S.-Colombia bilateral agreement, the Government of Colombia could neither confirm nor deny registry of the vessel. *See id.* Accordingly, the vessel was treated as a stateless vessel under 46 U.S.C. § 70502(d)(1)(C) of the Maritime Drug Law Enforcement Act ("MDLEA"). A full law enforcement boarding ensued, and law enforcement officials found thirty-two (32) packages of cocaine. Defendants were thereafter arrested.

On August 16, 2021, six (6) days after the seizure, Defendants were charged by criminal complaint with conspiracy to possess with intent to distribute cocaine while aboard a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. § 70506(b) of the MDLEA. *See* ECF No. [1]. On August 18, 2021, eight (8) days after the seizure, Defendants arrived in the Southern District of Florida. *See* ECF No. [33] at 4. On August 19, 2021, nine (9) days after the seizure, Defendants made their initial appearance before Magistrate Judge Jacqueline Becerra. *See* ECF Nos. [4], [5], [6]. On August 24, 2021, Defendants were charged by Indictment with conspiracy to possess a controlled substance aboard a vessel in violation of 46 U.S.C. § 70506(b) of the MDLEA and possession with intent to distribute a controlled substance aboard a vessel in violation of 46 U.S.C. § 70506(a)(1) of the MDLEA. ECF No. [8] ("Indictment").

Defendants now seek dismissal of the Indictment asserting that: (1) the MDLEA's definition of a "stateless" vessel in § 70502(d)(1)(C) is facially unconstitutional because it applies to vessels that are not "stateless" under customary international law and therefore exceeds Congress's authority under Article I, Section 8, Clause 10 ("Felonies Clause"); (2) the United

States' authority pursuant to the MDLEA is limited to offenses occurring on the "high Seas," and the alleged offenses did not take place on the "high Seas" because the offenses took place within the Exclusive Economic Zone ("EEZ") of Venezuela; (3) Congress's power under the Felonies Clause is limited to offenses bearing a nexus to the United States and the exercise of jurisdiction over Defendants violates Due Process; and (4) the Government's violations of Federal Rules of Criminal Procedure Rules 5(a) and 5(b) warrant dismissal. *See* ECF No. [31]. With regard to Defendants' first argument, Defendants rely on *United States v. Davila-Reyes*, 23 F.4th 153 (1st Cir. 2022). There, the First Circuit held that 46 U.S.C. § 70502(d)(1)(C) is facially unconstitutional because the provision applies to vessels that are not "stateless" under customary international law and therefore exceeds Congress's authority under the Felonies Clause. *See* ECF No. [31] at 5. With regard to Defendants' last argument, Defendants request an evidentiary hearing to establish the Government's reasons for delay. *See id.*

The Government responds that Defendants' arguments are foreclosed by binding Eleventh Circuit precedent. That precedent expressly upholds MDLEA prosecutions in cases where the vessel's claimed nation of registry could not corroborate the registry claims, cases where vessels were deemed to be on the high seas because they were outside territorial waters, and cases where foreign crew members detained on the high seas took much longer to be presented to a United States court. *See* ECF No. [33].

II.     **LEGAL STANDARD**

    a. **Motion to Dismiss Indictment**

A motion to dismiss an indictment is governed by Federal Rule of Criminal Procedure 12(b). A defendant may challenge an indictment on various grounds, including failure to state an offense, lack of jurisdiction, or constitutional reasons. *See United States v. Kaley*, 677 F.3d 1316,

1325 (11th Cir. 2012). "Under Fed. R. Crim. P. 12(b) an indictment may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have developed at trial." *United States v. Torkington,* 812 F.2d 1347, 1354 (11th Cir. 1987). Further, "[t]he sufficiency of a criminal indictment is determined from its face." *United States v. Critzer,* 951 F.2d 306, 307 (11th Cir. 1992). "The indictment is sufficient if it charges in the language of the statute." *Id.* "Constitutional requirements are fulfilled 'by an indictment that tracks the wording of the statute, as long as the language sets forth the essential elements of the crime.'" *Id.* at 308; *see also United States v. Cole*, 755 F.2d 748, 760 (11th Cir. 1985). The indictment's allegations are assumed to be true and are viewed in the light most favorable to the government. *See Torkington*, 812 F.2d at 1354.

    b. **MDLEA**

The Felonies Clause of the U.S. Constitution grants Congress the power to "To define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations[.]" U.S. Const. art. 1, § 8, cl. 10. Pursuant to the Felonies Clause, Congress enacted the MDLEA, which makes drug trafficking on certain vessels in the high seas subject to the jurisdiction of the United States. 46 U.S.C. §§ 70501 *et seq.* The MDLEA applies to all cases where the alleged trafficking occurs on a "vessel subject to the jurisdiction of the United States[.]" 46 U.S.C. § 70503(e)(1). The MDLEA further defines a vessel subject to the jurisdiction of the United States to include "(C) a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." 46 U.S.C. § 70502(d)(1)(C).

### III. DISCUSSION

#### a. MDLEA's Definition of a Stateless Vessel

Defendants first argue that the Indictment must be dismissed because 46 U.S.C. § 70502(d)(1)(C) of the MDLEA is facially unconstitutional. *See* ECF No. [31] at 5-13. According to Defendants, Congress's authority under the Felonies Clause to "define and punish . . . Felonies committed on the high Seas" is limited by customary international law. *See id.* at 6. International law only allows jurisdiction over stateless vessels. *See id.* at 9 (citing *Davila-Reyes*, 23 F.4th at 180). When a master or individual in charge of a vessel makes a claim of nationality, international law considers the vessel to have established a *prima facie* showing of nationality that does not render the vessel stateless, even if the claimed nation of registry does not confirm or deny the nationality of the vessel. *See id.* at 9. In contrast, § 70502(d)(1)(C) of the MDLEA confers jurisdiction over a vessel if the master or individual in charge makes a claim of registry and the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality. As such, Defendants submit that § 70502(d)(1)(C) of the MDLEA is facially unconstitutional because it extends beyond Congress's constitutional authority under the Felonies Clause.

Defendants further argue that the Eleventh Circuit has not addressed the issue and that the Court should consider the First Circuit's holding in *Davila-Reyes*. *See* ECF No. [31] at 11-13. According to Defendants, *United States v. Hernandez*, 864 F.3d 1292, 1303 (11th Cir. 2017), involved a statutory challenge pursuant to the MDLEA rather than a constitutional challenge of the MDLEA. *See id.* at 11-12. Defendants claim that the defendants in *Hernandez* argued unavailingly that the Government failed to establish jurisdiction pursuant to § 70502(d)(1)(C)

because the vessel was not actually stateless. *See id.* at 11. The defendants in *Hernandez* did not challenge the constitutionality of § 70502(d)(1)(C). *See id.*

The Government argues that Defendants misinterpret binding Eleventh Circuit precedent, namely *Hernandez*, 864 F.3d at 1303, where Guatemala "had not 'affirmatively and unequivocally' asserted that [the vessel] was of Guatemalan nationality," and *United States v. Campbell*, 743 F.3d 802, 809-810 (11th Cir. 2014), where Haiti "could neither confirm nor deny the registry" claim. *See* ECF No. [33] at 6. According to the Government, the two cases presented the identical criminal offense and factual circumstances as the instant case, and the Eleventh Circuit held that the MDLEA conferred jurisdiction over the defendants. *See id.* at 13-14. Further, in *Hernandez*, the Eleventh Circuit specifically held that "the MDLEA was a constitutional exercise of Congressional authority under the Felonies Clause." *See id.* at 13 (citing 864 F.3d at 1303). In *Campbell*, the Eleventh Circuit rejected the defendant's "argu[ment] that Congress lacked the power under the Felonies Clause to define his conduct as a criminal offense," thereby upholding the constitutionality of the MDLEA under the Felonies Clause. *See id.* at 13 (citing 743 F.3d at 806). Given binding Eleventh Circuit precedent, the Government argues that Defendants' reliance on the First Circuit's decision in *Davila-Reyes* is misplaced. *See id.* at 6.

In addition, the Government submits that, as a necessary predicate for the First Circuit's holding that the MDLEA violated the Felonies Clause by not complying with international law, the First Circuit rejected the Government's argument that the "protective principle" of international law permits the MDLEA's conferral of jurisdiction over the defendants' vessel. *See id.* at 11 (citing *Davila-Reyes*, 23 F.4th at 161). The protective principle is "the right of a state to punish a limited class of offenses committed outside its territory by persons who are not its nationals – offenses directed against the security of the state or other offenses threatening the

integrity of governmental functions that are generally recognized as crimes by developed legal systems." Restatement (Third) of Foreign Relations § 402, cmt. f (1987). The First Circuit did "not view the protective principle as supporting U.S. jurisdiction over drug-trafficking activity conducted on the high seas by foreign nationals on foreign vessels." *Davila-Reyes*, 23 F.4th at 161. In contrast, the Eleventh Circuit has repeatedly justified the MDLEA's assertion of jurisdiction over foreign nationals trafficking drugs on the high seas by expressly referencing the United States' rights under the protective principle. *See, e.g.*, *United States v. Tinoco*, 304 F.3d 1088, 1108 (11th Cir. 2002); *United States v. Persaud*, 605 F. App'x 791, 795 (11th Cir. 2015). As such, the Government avers that the First Circuit's holding relies on a predicate that is foreclosed by Eleventh Circuit precedent. *See* ECF No. [33] at 11-12.

Furthermore, the Government raises several arguments suggesting that *Davila-Reyes* was wrongly decided. First, the Government submits that the text of the Felonies Clause indicates that Congress's power to define and punish felonies committed on the high seas is not limited by international law. *See id.* at 9. Unlike Congress's power to criminalize piracy or offenses against the law of nations, which stems from universal jurisdiction over crimes recognized by international law, Congress's power to criminalize felonies committed on the high seas does not depend on universal jurisdiction. *See id.* Instead, the Constitution allows Congress to prohibit conduct on the high seas – conduct other than piracy and offenses against the law of nations – irrespective of universal jurisdiction. *See id.* The Government argues that the Framers chose not to include language to limit Congress's power to define and punish felonies committed on the high seas to the bounds of international law, and that the Court should not read into the Constitution an international law limit where there is none. *See id.* at 9-10. As such, the Government argues that

the MDLEA is not facially unconstitutional because the Felonies Clause is not bound by international law. *See id.*

Second, even if the Felonies Clause was limited by international law, the Government argues that the plain text of § 70502(d)(1)(C) reflects Congress's clear intent to assert jurisdiction over vessels when the purported nation of registry does not corroborate the claim. *See id.* at 7. "'[I]f a statute makes plain Congress's intent,' a court 'must enforce the intent of Congress irrespective of whether the statute conforms to customary international law.'" *United States v. Ballestas*, 795 F.3d 138, 144 (D.C. Cir. 2015) (quoting *United States v. Yousef*, 327 F.3d 56, 93 (2d Cir. 2003)). "After all, 'Congress is not bound by international law,' so 'it may legislate with respect to conduct outside the United States, in excess of the limits posed by international law.'" *Id.* at 144 (quoting *Yousef*, 327 F.3d at 86). While international law is relevant for purposes of statutory construction and courts should employ the "Charming Betsy" canon of construction to avoid finding conflicts with international law, *see Murray v. Schooner Charming Betsy*, 6 U.S. 64 (1804) ("[A]n act of congress ought never to be construed to violate the law of nations if any other possible construction remains."), if there is clear Congressional intent to act contrary to international law, such Congressional intent must be given effect. *See United States v. Yunis*, 924 F.2d 1086, 1091 (D.C. Cir. 1991). As such, the Government submits that to the extent that a plain reading of the MDLEA indicates Congressional intent to confer jurisdiction over vessels whose nationality cannot be confirmed or denied, in contravention of international law, the Court must give the MDLEA that effect. *See* ECF No. [33] at 7, 10.

Third, the Government argues that *Davila-Reyes* was wrongly decided because it misapplies international law. *See* ECF No. [33] at 14-15. The MDLEA states that "[a] claim of failure to comply with international law in the enforcement of [the MDLEA] may be made only

by a foreign nation. A failure to comply with international law . . . is not a defense to a proceeding under this chapter." 46 U.S.C. § 70505. Therefore, the Government argues that defendants cannot rely on alleged violations of international law as a defense under the MDLEA. *See* ECF No. [33] at 14-15. Moreover, the Government stresses that the Eleventh Circuit has held that the MDLEA's jurisdictional provisions are intended to "allocate power between the courts and the executive as to which of the two will be responsible for complying with U.S. obligations under the international law of criminal jurisdiction." *Id.* at 15 (quoting *Hernandez*, 864 F.3d at 1303-04). As such, to the extent that there are any questions about the status of a defendant's vessel under international law, the challenge should be brought by a sovereign nation and "dealt with diplomatically and not by the courts." *Hernandez*, 864 F.3d at 1304.

The Court agrees with the Government. While Defendants argue that the Eleventh Circuit in *Hernandez*, 864 F.3d at 1303, addressed a statutory challenge under the MDLEA rather than a constitutional challenge of the MDLEA, the Eleventh Circuit expressly upheld the constitutionality of the MDLEA with respect to the Felonies Clause in rejecting the defendants' statutory challenge. The Eleventh Circuit stated that "the MDLEA was a constitutional exercise of Congressional authority under the Felonies Clause." 864 F.3d at 1303 (citing *Campbell*, 743 F.3d at 809-10). Further, although Defendants argue that *Campbell* dealt with other constitutional challenges and not the specific argument that the Felonies Clause is textually limited by international law, the Eleventh Circuit rejected the defendant's constitutional challenges and the defendant's overarching argument that "Congress lacked the power under the Felonies Clause to define [the defendant's] conduct as a criminal offense." 743 F.3d at 806. In holding that Congress did have the power under the Felonies Clause to enact the MDLEA's jurisdictional provisions and criminalize the defendant's conduct, which is identical to Defendants' conduct here, the Eleventh

9

Circuit effectively foreclosed Defendants' argument that Congress did not have the power under the Felonies Clause to enact the MDLEA's jurisdictional provisions. Thus, a plain reading of the Eleventh Circuit's holdings in both cases indicates that the Eleventh Circuit has twice upheld the constitutionality of the MDLEA under the Felonies Clause.

The Court is not persuaded by Defendants' argument that the Court is not bound by the prior Eleventh Circuit decisions because the Eleventh Circuit did not expressly consider whether the MDLEA violates the Felonies Clause in light of customary international law. Although "[q]uestions which merely lurk in the record . . . are not to be considered as having been so decided as to constitute precedents," *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004), in the instant case, Defendants' argument did not merely "lurk" in the record of the two Eleventh Circuit cases. Rather, the Eleventh Circuit considered jurisdictional arguments related to the prosecution of identical criminal conduct in identical factual circumstances pursuant to the identical provision of the MDLEA as the instant case. *See Campbell*, 743 F.3d 802; *Hernandez*, 864 F.3d 1292. As noted above, *Campbell* further considered related constitutional challenges based on the Felonies Clause, and both *Campbell* and *Hernandez* expressly upheld the constitutionality of the MDLEA with respect to the Felonies Clause. To the extent that Defendants raise a specific argument that the MDLEA violates the Felonies Clause because of customary international law, the Eleventh Circuit instructs courts that "overlooked reason[s] or argument[s]" do not create an excuse to overlook the binding authority of precedent. *In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015). Therefore, the Court declines Defendants' invitation to overlook binding precedent establishing the constitutionality of the MDLEA and to instead rely on Defendants' presumption that the Eleventh Circuit did not fully consider an additional argument that purportedly renders the MDLEA unconstitutional.

CASE NO. 21-cr-20438-BLOOM

Lastly, assuming for the sake of argument that the Felonies Clause is bound by international law, the Eleventh Circuit has repeatedly permitted the United States to assert jurisdiction over foreign nationals trafficking drugs on the high seas by referencing the United States' rights under the protective principle of international law. *See, e.g.*, *Tinoco*, 304 F.3d at 1108; *Persaud*, 605 F. App'x at 795. Therefore, even if the Felonies Clause is bound by international law, Eleventh Circuit precedent establishes that the MDLEA does not contravene international law and is instead appropriately based on the protective principle of international law. In other words, Eleventh Circuit precedent establishes that Congress did not overstep its authority in enacting the MDLEA under the Felonies Clause by violating international law because the protective principle of international law permits MDLEA's conferral of jurisdiction over vessels whose nationality cannot be confirmed.[1]

As such, Defendants' Motion is denied as to this matter, and the Court need not address the Government's argument that *Davila-Reyes* was wrongly decided.

### b. Offenses Occurring on the High Seas

Defendants argue that the United States' authority pursuant to the MDLEA is limited to offenses occurring on the high seas, and because these offenses took place within the Exclusive Economic Zone ("EEZ") of Venezuela, they did not occur on the high seas. *See* ECF No. [31] at 13-17. Defendants reiterate that the Felonies Clause grants Congress the authority to "define and

---

[1] Defendants argue that Eleventh Circuit cases on the protective principle only address whether Congress can rely on the protective principle to prohibit drug trafficking on stateless vessels absent a nexus to the United States. *See* ECF No. [36] at 2-3. Defendants argue that the cases do not address whether Congress exceeded its constitutional authority by allowing jurisdiction over vessels whose nationality cannot be confirmed because such vessels are not stateless vessels but rather foreign vessels. The Court is not persuaded. Plainly, the Eleventh Circuit has held that "the United States could prosecute foreign nationals on foreign vessels under the 'protective principle' of international law." *United States v. Gonzalez*, 776 F.2d 931, 938 (11th Cir. 1985). If the United States' jurisdictional reach under the protective principle extends to include foreign vessels, then logically the United States can prosecute foreign nationals on vessels purported to be of foreign nationality but whose nationality cannot be confirmed.

punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations" U.S. Const. art. I, § 8, cl. 10. According to Defendants, Congress's power to "define" offenses against the law of nations means that Congress has the power "to codify and explain offenses that had already been understood as offenses against the law of nations[,]" not to "create or declare offenses against the law of nations." *United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1249-50 (11th Cir. 2012). Following Defendants' logic, the same reasoning and limitations should apply to Congress's power to "define" felonies on the high seas. *See* ECF No. [31] at 16-17. Thus, Defendants submit that the "high Seas" referenced in the Felonies Clause should be construed according to the definition of the high seas under customary international law. *See id.* Further, Defendants posit that

> [u]nder customary international law as reflected in the 1982 United Nations Convention on the Law of the Sea and without prejudice to high seas freedoms that may be exercised within exclusive economic zones pursuant to article 58 of the United Nations Convention on the Law of the Sea, and unless the context clearly requires otherwise . . . *the high seas means waters that are not the exclusive economic zone* (as defined in § 2.30), territorial sea (as defined in § 2.22), or internal waters of the United States or any other nation.

33 C.F.R. § 2.32(d) (emphasis added). As such, Defendants argue that because the alleged offenses took place within the EEZ of Venezuela, they did not occur on the high seas, and the Indictment must be dismissed. *See* ECF No. [31] at 17.

The Government responds that the MDLEA may be enforced within a foreign nation's EEZ because an EEZ is not a part of a foreign nation's territorial waters but rather a part of the high seas. *See* ECF No. [33] at 15-18. The Government submits that a vessel outside the recognized twelve-mile limit of a nation's territorial seas is a "vessel located within international waters" and subject to MDLEA jurisdiction, even if the vessel is within a foreign nation's EEZ. ECF No. [33] at 15-18 (citing *McPhee*, 336 F.3d at 1273 (citing 33 C.F.R. § 2.05-1's definition of the "high seas"

as "all waters which are neither territorial seas nor internal waters of the United States or of any foreign country"); *United States v. Rioseco*, 845 F.2d 299, 300 (11th Cir. 1988) (affirming a Lacey Act conviction of a vessel stopped by the Coast Guard in "an area of the high seas that the United States acknowledges to be within the Bahamas' exclusive economic zone"); *United States v. Beyle*, 782 F.3d 159, 167 (4th Cir. 2015) ("The EEZ bordering a particular nation's territorial sea is merely a part of the high seas where that nation has special economic rights and jurisdiction.")).

In their Reply, Defendants Barros and Hernandez-Olaya ("Reply Defendants") argue that the Government's reliance on *McPhee* is unavailing because *McPhee* did not answer the question presented in this case. *See* ECF No. [36] at 7. According to the Reply Defendants, the defendant in *McPhee* argued that the Government failed to establish the statutory jurisdictional requirement because the vessel was located within the territorial waters of the Bahamas. *See id.* (citing 336 F.3d at 1273). The Eleventh Circuit did not have to decide whether the vessel was on the "high seas" as that term is defined for purposes of the Felonies Clause. *See id.* at 7-8. Defendants also note that *McPhee* relied on 33 C.F.R. § 2.05-1, which has since been repealed. *See id.* at 9. Further, the Reply Defendants submit that *Rioseco*, 845 F.2d 299, involved the Lacey Act, which was not enacted pursuant to the Felonies Clause. *See id.* at 8. The Reply Defendants also argue that to the extent the Government relies on *Beyle*, 782 F.3d 159, the Fourth Circuit's decision was based on policy and motivated by the fear of hampering international law enforcement efforts against the threat of the Somali pirates. *See* ECF No. [36] at 12. Therefore, the Reply Defendants argue that the Fourth Circuit's policy-based decision is incorrect and not instructive. *See id.*

The Court agrees with the Government. As both parties agree, the material question is whether the EEZ is a part of the high seas. Despite Defendants' contention, the Eleventh Circuit expressly stated in *McPhee* that if a vessel was outside the "twelve-mile Bahamian territorial

boundary," then the vessel was "in international waters or at 'high seas' at that time." 336 F.3d at 1276. The fact that the Eleventh Circuit did not also consider whether the vessel was on the "high seas" as that term is defined for purposes of the Felonies Clause is inapposite, considering the Eleventh Circuit's holding that establishes that a vessel located beyond territorial waters was at high seas. *See id.* The Court again declines Defendants' invitation to overlook binding precedent indicating that the EEZ beyond the twelve-mile territorial boundary is a part of the high seas.

Furthermore, Defendants argue that *McPhee* relied on 33 C.F.R. § 2.05-1, which has since been repealed, and the Court should look to 33 C.F.R. § 2.32(d)'s definition of the high seas, which excludes EEZs. However, the Court is not persuaded. Putting aside the now-repealed 33 C.F.R. § 2.05-1, the Court notes that the pertinent definition of high seas for purposes of criminal enforcement jurisdiction is found in § 2.32(c), not § 2.32(d). Section 2.32(c) expressly defines "high seas" – for the purposes of criminal enforcement jurisdiction pursuant to 14 U.S.C. § 522[2] – to include the "*exclusive economic zones of the United States and other nations*, as well as those waters that are seaward of territorial seas of the United States and other nations." 33 C.F.R. § 2.32(c) (emphasis added). Thus, both controlling Eleventh Circuit precedent and federal regulations defining high seas for the purposes of enforcing the MDLEA define high seas as all waters seaward of any nation's twelve-mile territorial sea limit, including EEZs.

As such, Defendants' Motion is denied as to this matter. Given binding Eleventh Circuit precedent and federal regulations, the Court need not address the Government's other arguments.

---

[2] Title 14 U.S.C. § 522 states, in relevant part, "[t]he Coast Guard may make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States."

CASE NO. 21-cr-20438-BLOOM

### c. Nexus to the United States and Due Process

Defendants argue, for preservation purposes, that the Indictment must be dismissed because Defendants and their alleged criminal conduct do not have any ties to the United States. *See* ECF No. [31] at 18-20. According to Defendants, Congress's power under the Felonies Clause does not extend to offenses bearing no nexus to the United States, and this Court's exercise of *in personam* jurisdiction over Defendants violates the Due Process Clause. *See id.* The Government does not address Defendants' argument on this matter. *See generally* ECF No. [33].

As Defendants concede, the Eleventh Circuit has rejected challenges to the MDLEA's constitutionality as applied to unregistered vessels on the high seas with no ties to the United States. *See, e.g.*, *United States v. Campbell*, 734 F.3d 802, 806 (11th Cir. 2014); *United States v. Cruickshank*, 837 F.3d 1182, 1190 (11th Cir. 2016); *United States v. Estupinan*, 453 F.3d 1336, 1338 n.2 (11th Cir. 2006); *United States v. De La Garza*, 516 F.3d 1266, 1272 (11th Cir. 2008); *United States v. Rendon*, 354 F.3d 1320, 1325 (11th Cir. 2003); *United States v. Marino-Garcia*, 679 F.2d 1373, 1383 (11th Cir. 1982). The Eleventh Circuit has further held that "the Due Process Clause of the Fifth Amendment does not prohibit the trial and conviction of an alien captured on the high seas while drug trafficking, because the [MDLEA] provides clear notice that all nations prohibit and condemn drug trafficking aboard stateless vessels on the high seas." *Campbell*, 743 F.3d at 812 (internal quotation marks and citations omitted). Further, "this [C]ircuit and other circuits have not embellished the [MDLEA] with the requirement of a nexus between a defendant's criminal conduct and the United States." *Id.* at 810 (citing *Estupinan*, 453 F.3d at 1338). Therefore, in light of binding Eleventh Circuit precedent, the Court need not proceed further and the Motion is denied as to this matter.

CASE NO. 21-cr-20438-BLOOM

### d. Alleged Violations of Fed. R. Crim. P. 5(a) and 5(b)

Lastly, Defendants argue that the Government violated Rule 5(a) by failing to bring Defendants before a magistrate judge "without unreasonable delay." *See* ECF No. [31] at 21-22. According to Defendants, holding Defendants for nine days before presenting Defendants to Magistrate Judge Becerra was an unreasonable delay. *See id.* Defendants also argue that the Government violated Rule 5(b) by failing to secure a criminal complaint against Defendants until at least six days after Defendants' arrests and thereby infringed on Defendants' Fourth Amendment rights against unreasonable seizures. *See id.* at 23-24. Defendants submit that dismissal is the appropriate remedy given the Rule 5 violations. *See id.* at 24-26. Defendants also seek an evidentiary hearing on the matter to the extent necessary. *See id.* at 5.

The Government responds that in determining whether there has been a Rule 5(a) violation, the Court must consider: (1) the distance from the point of seizure to the United States port; (2) any reason for the delay, such as exigent circumstances or emergencies that arise during the interval between the seizure and arrival in port; (3) evidence of mistreatment or improper interrogation during the delay; and (4) the time between arrival in port and presentment to the magistrate. *See* No. [33] at 19-23 (citing *United States v. Purvis*, 768 F.2d 1237, 1238-39 (11th Cir. 1985)). The Government submits that an analysis of the *Purvis* factors to this case indicates that the nine-day delay was not an unreasonable delay. *See id.* at 20-22. Further, the Government argues that Defendants' Rule 5(b) argument based on the Fourth Amendment is foreclosed by *United States v. Cabezas-Monato*. *See* ECF No. [33] at 18-19 (citing 949 F.3d 567, 593 (11th Cir. 2020) ("[T]he Fourth Amendment does not apply to searches and seizures (arrests) by the United States of a non-citizen/non-resident alien arrested in international waters or a foreign country.") (emphasis omitted)).

**CASE NO. 21-cr-20438-BLOOM**

In the Reply, the Reply Defendants maintain that the delays were unreasonable because the Government did not provide information or evidence regarding the specific route, stops, or locations. *See* ECF No. [36] at 13. The Reply Defendants do not otherwise challenge the application of the *Purvis* factors, respond to Government's explanations for the delays, address the Government's exhibits demonstrating that Defendants were not mistreated or improperly interrogated, or dispute the time between Defendants' arrival in Miami and Defendants' initial appearance before Magistrate Judge Becerra. *See id.* at 13-15.

The Court agrees with the Government. First, in regard to the Rule 5(a) violation, the undisputed facts here indicate that the distance between the point of seizure and the port of Miami was 1,334 nautical miles. *See* ECF No. [33] at 20. The Government transported Defendants to Miami in nine days, thus transporting them at a rate of approximately 148 nautical miles per day. In *Purvis*, the Eleventh Circuit did not find unreasonable the Government's conduct in transporting the defendants 350 nautical miles in five days, or at a rate of 70 nautical miles per day. Given that the Eleventh Circuit determined that a five-day delay was not unreasonable after considering the distance traveled, the undisputed facts in this case similarly establish that a nine-day delay is not unreasonable considering the relatively longer distance traveled. Next, as the Government correctly argues and the Reply Defendants do not dispute, Hernandez-Olaya was transported in the interim to receive medical attention. *See* ECF Nos. [33] at 24, [36] at 13. As such, it is undisputed that there was at least one justified reason for the delay. Further, the Government submitted exhibits indicating that there was no mistreatment or improper interrogation during the delay, which the Reply Defendants do not challenge. *See* ECF Nos. [33-1], [33-2], [33-3].[3] Lastly,

---

[3] Defendants' citation to a news article from 2017 regarding the conditions of confinement of non-party detainees is unavailing. *See* ECF No. [31] at 25 (citing Seth Freed Wessler, *The Coast Guard's 'Floating Guantanamos'*, N.Y. TIMES MAGAZINE, Nov. 20, 2017, at 6). Defendants are not the detainees featured in

17

Defendants do not dispute that Defendants arrived in Miami on August 18, 2021, and were presented before Magistrate Judge Becerra the very next day on August 19, 2021. *See* ECF No. [33] at 21-22. Therefore, the time between arrival in port and Defendants' initial appearance was not unreasonable. Applying the *Purvis* factors to the undisputed facts of this case establishes that there was no Rule 5(a) violation. Further, as the Government correctly point out, Defendants' Rule 5(b) argument based on the Fourth Amendment is foreclosed by *Cabezas-Monato*, 949 F.3d at 593.[4]

In sum, because the delay in Defendants' initial appearance was not unreasonable, there was no violation of Rule 5(a), and Rule 5(b) is inapplicable. Given the Court's determination, the Court need not address whether dismissal is an appropriate remedy for violations of Rule 5(a) or Rule 5(b). Nonetheless, the Court notes that the Eleventh Circuit has held that "[t]he only remedy we have recognized for a violation of Rule 5 is the suppression of evidence obtained as a result of the violation." *United States v. Carruthers,* No. 10-14261, 2012 WL 447412, at *6 (11th Cir. Feb. 14, 2012) (citing *United States v. Mendoza,* 473 F.2d 697, 702 (5th Cir. 1973)). As such, even if the Court were to find that the Government violated Rule 5(a) or the Government violated Rule 5(b) and Rule 5(b) is applicable, Defendants are not entitled to the relief they seek. As such, Defendants' Motion is denied on this matter.[5]

---

the 2017 article, and there is no indication that Defendants were subject to similar conditions as the detainees from several years prior.

[4] Defendants' references to "outrageous conduct" are also unavailing because the Eleventh Circuit has not adopted the outrageous government conduct doctrine. *See United States v. Marin*, No. 8:19-cr-488-T-36JSS, 2020 WL 7364601, at *10 (M.D. Fla. Apr. 24, 2020) (citing *United States v. Jayyousi*, 657 F.3d 1085, 1111 (11th Cir. 2011)).

[5] For the same reasons, the Court denies Defendants' request for an evidentiary hearing.

**CASE NO. 21-cr-20438-BLOOM**

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [31]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 17, 2022.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record